**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**DALLAS MEDICAL CENTER**                           )
17 Medical Parkway                                  )
Dallas, TX 75234                                    )
                                                    )
**HARLINGEN MEDICAL CENTER**                        )
5510 South Expressway                               )
Harlingen, TX 78550                                 )
                                                    )
**KNAPP MEDICAL CENTER**                            )
1401 East Eight Street                              )
Weslaco, TX 78596                                   )
                                                    )
**MEMORIAL HERMANN HOSPITAL**                       )
**SYSTEM**                                          )
1635 North Loop West                                )
Houston, TX 77008                                   )
                                                    )
**MEMORIAL HERMANN KATY HOSPITAL**                  )
23900 Katy Freeway                                  )
Katy, TX  77494                                     )
                                                    )
**MEMORIAL HERMANN MEMORIAL CITY**                  )
**MEDICAL CENTER**                                  )
921 Gessner Drive                                   )
Houston, TX  77024                                  )
                                                    )
**MEMORIAL HERMANN NORTHEAST**                      )
18951 North Memorial Drive                          )
Humble, TX  77338                                   )
                                                    )
**MEMORIAL HERMANN SUGAR LAND**                     )
**HOSPITAL**                                        )
17500 West Grand Parkway                            )
Sugar Land, TX  77030                               )
                                                    )
**MEMORIAL HERMANN TEXAS MEDICAL**                  )
**CENTER**                                          )
6411 Fannin Street                                  )
Houston, TX  77030                                  )

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**MISSION REGIONAL MEDICAL CENTER**  )
900 South Bryan  )
Mission, TX 78572  )
  )
**PAMPA REGIONAL MEDICAL CENTER**  )
One Medical Plaza  )
Pampa, TX 79065  )
  )
       Plaintiffs,  )
  )     Case No.
    v.  )
  )
**ROBERT F. KENNEDY, JR.**, In his Capacity as  )
Secretary of the U.S. Department  )
of Health and Human Services  )
200 Independence Avenue, S.W.  )
Washington, D.C. 20201  )
  )
       Defendant.  )
_____  )

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**INTRODUCTION**

1.      This civil action is brought by Dallas Medical Center, Harlingen Medical Center, Knapp Medical Center, Memorial Hermann Hospital System, Memorial Hermann Katy Hospital, Memorial Hermann Memorial City Medical Center, Memorial Hermann Northeast, Memorial Hermann Sugar Land Hospital, Memorial Hermann Texas Medical Center, Mission Regional Medical Center and Pampa Regional Medical Center (hereinafter "Plaintiffs," "Providers," or "Plaintiff Hospitals") against the Secretary of the United States Department of Health and Human Services (the "Secretary" of "HHS")[1] for judicial review following a final decision rendered on May 28, 2026 by the Provider Reimbursement Review Board ("PRRB") , a component of HHS. Judicial review is sought arising from the PRRB's denial of Plaintiffs' request for expedited judicial review ("EJR") of and concurrent unreasonably delayed action regarding a challenge to Plaintiffs' potential reimbursement in PRRB Case Nos. 22-0545GC, 23-1035GC, and 23-1135GC. (Plaintiffs' requests for EJR with accompanying exhibits in PRRB Case Nos. 22-0545GC, 1035GC and 1135GC are attached hereto as **Exhibit J, Exhibit J-1 and Exhibit J-2,** respectively).

2.      The basis for this lawsuit is the Secretary's willful refusal to follow clear, unambiguous federal law and the PRRB's unreasonable delay in acting on pending challenges to Plaintiffs' ability to be reimbursed for the issue under appeal. Plaintiff Hospitals specifically challenge the PRRB's denial of their requests for EJR of and inaction with respect to a challenge to Plaintiff Hospitals' potential reimbursement from administrative Common Issue Related Party ("CIRP") Groups. Moreover, this case arises from the Secretary's contracted Medicare Administrative Contractor's ("MAC") refusal to include days reimbursed by the uncompensated care pool established under Texas's Healthcare Transformation and Quality Improvement

---

[1] The Secretary is the proper Defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Program, which is a section 1115 waiver program approved by the Secretary (hereinafter, "section 1115 waiver days"), in the Medicaid Fractions for Plaintiffs' respective cost years at issue in this case (fiscal year ends, hereinafter "FYEs," listed for each CIRP Group appeal in the Schedules of Providers or "SOPs" attached as **Exhibit A**).

3.    This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), and other authorities. The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospitals' respective Medicare Disproportionate Share Hospital ("DSH") payments for the various fiscal years ("FY") at issue in the subject administrative appeal, each ending in calendar years ("CYs") 2017, 2018 or 2019.

4.    The PRRB's final decision, its denial of Plaintiff Hospitals' requests for EJR, was noticed by letter dated May 28, 2026 (denial of requests for EJR attached as **Exhibit B**), and was preceded by the MAC's May 18, 2023, July 25, 2024 and August 13, 2024 substantive claim challenges to Plaintiff Hospitals' ability to be granted reimbursement for the subject issue of their group appeal by the PRRB  (MAC's May 18, 2023, July 25, 2024 and August 13, 2024 letters with accompanying exhibits attached as **Exhibit C, Exhibit C-1 and Exhibit C-2,** respectively).

### JURISDICTION AND VENUE

5.    This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision), and 28 U.S.C. §§ 1331 (federal question). *See Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 811, 813-15 (D.C. Cir. 2001); *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). Jurisdiction also is available under 28 U.S.C. § 1331 where the agency renders a final determination for which there is no

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

administrative appeal available. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

6.      Venue lies in this district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

## **PARTIES**

7.      Each Plaintiff's respective address and Medicare provider number is as follows:

| Plaintiff Provider Address | Plaintiff Medicare Provider Number |
|---|---|
| Dallas Medical Center 17 Medical Parkway Dallas, TX 75234 | 45-0379 |
| Harlingen Medical Center 5510 South Expressway Harlingen, TX 78550 | 45-0855 |
| Knapp Medical Center 1401 East Eight Street Weslaco, TX  78596 | 45-0128 |
| Memorial Hermann Hospital System 1635 North Loop West Houston, TX 77008 | 45-0184 |
| Memorial Hermann Katy Hospital 23900 Katy Freeway Katy, TX 77494 | 45-0847 |
| Memorial Hermann Memorial City Medical Center 921 Gessner Drive Houston, TX 77024 | 45-0610 |
| Memorial Hermann Northeast 18951 North Memorial Drive Humble, TX 77338 | 45-0684 |
| Memorial Hermann Sugar Land Hospital 17500 West Grand Parkway Sugar Land, TX 77479 | 45-0848 |
| Memorial Hermann Texas Medical Center 6411 Fannin Street Houston, TX 77030 | 45-0068 |

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

| | |
|---|---|
| Mission Regional Medical Center<br>900 South Bryan<br>Mission, TX 78572 | 45-0176 |
| Pampa Regional Medical Center<br>One Medical Plaza<br>Pampa, TX 79065 | 45-0099 |

Each Plaintiff named herein had at all relevant times a Medicare provider agreement and was eligible to participate in the Medicare program. At all times during the relevant time periods pertinent to this complaint, each Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

8.      Defendant Kennedy, Jr. has offices at 200 Independence Avenue, SW, Washington DC 20201 and is the federal officer responsible for the administration of the Medicare program. As such, Defendant Kennedy, Jr. is sued in his official capacity as Secretary of HHS.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

9.      The Medicare Act establishes a system (the "Medicare program") of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through the Centers for Medicare & Medicaid Services ("CMS") and its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13262 (Mar. 9, 1977). CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations ("C.F.R.") and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals. The Secretary also issues other sub-regulatory guidance which generally do not have the force and effect of law. This civil action involves Medicare Part A. Part A provides coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c to 1395i-6. Such

items/services are furnished to Medicare beneficiaries by providers of services, including hospitals, that have entered into written provider agreements with the Secretary pursuant to 42 U.S.C. § 1395cc. Providers are paid (reimbursed) by CMS through MACs. *See* 42 U.S.C. § 1395kk-1(a).

10.     Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. §405.1803.

11.     Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay (Diagnosis Related Group, or "DRG"), subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

12.     Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

13.     Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

§1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

14.     There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "pickle method." *See* 42 U.S.C. §1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospitals' respective DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

15.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. §1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

16.     The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

17.    The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

18.    The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital. The Medicaid Fraction is at issue in this case.

19.    The statute further provides for purposes of determining the Medicaid Fraction "…the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act). The Secretary's non-inclusion of section 1115 waiver days in Plaintiff Hospitals' respective Medicaid Fractions for their respective FYEs at issue in CYs 2017, 2018 and 2019 is at the heart of the action for which Plaintiffs sought EJR.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## THE RELEVANT MEDICARE APPEALS PROCESS

20.     At the close of its FY, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

21.     The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a). The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

22.     The regulations interpret the statutory requirements by stating that "….the date of receipt by the PRRB of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. §405.1835(a)(3).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

23.     In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

24.     A hospital may obtain judicial review by filing suit in the U.S. District Court for the judicial district in which the hospital is located within 60 days of receipt of the Secretary's final administrative decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of a PRRB document. As such, the deadline in this case to seek judicial review is August 1, 2026. This filing is therefore timely.

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

25.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals ".... shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a ".... reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be …. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A)". Further, a "…. reviewing court shall …. hold unlawful and set aside agency action, findings, and conclusions

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

found to be …. unsupported by substantial evidence in a case …. reviewed on the record of an agency hearing provided by statute[.]" *Id.* § 706(2)(E).

### LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH AND D.C. CIRCUIT DECISIONS

26.     In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Court rejected the Secretary's assertion that for hospital days under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "…eligible for inpatient hospital services." *See id.* at 46. That Court disagreed. *See id.* at 46-47. According to the *HealthAlliance* court:

> [i]t is clear from the plain language of the regulation's text [at 42 C.F.R. §412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment.

*Id.* at 47. This remains true in this dispute.

27.     A similar issue was presented in *Forrest General Hospital v. Azar*, 926 F.3d 221 (5th Cir. 2019). The Secretary claimed an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *See id.* at 232. In disagreeing, the Fifth Circuit found the …

> …excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion convincingly explains why the law governing the inclusion of section 1115 waiver patient days in the Medicaid fraction is straightforward: the plain regulatory text demands that such days be included—period.

*Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that, "[w]hat does *not* matter for purposes of this

regulation is what the plan documents say about eligibility for particular services." *See Forrest General* at 228-229. Following *Forrest General*, the Secretary continued to litigate, and lose, the issue whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which <u>did not specifically mention</u> inpatient hospital benefits, should be included in the Medicaid Fraction. *See, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020).

28.     As a result of those losses, CMS issued guidance acquiescing to the Fifth Circuit and D.C. Circuit decisions. (*See* CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) attached hereto as **Exhibit D**). The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> [f]or cost reports that are open via a [] (PRRB) appeal that has not yet been heard before the PRRB, [s]ection 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date. In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>
> 1. For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.
>
> 2. The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.
>
> 3. The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

4. The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

(Ex. D at 4).

29.    In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58640, 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

## EJR AND SUBSTANTIVE CLAIM REQUIREMENTS

30.    According to PRRB Rule 42.3, a request for EJR must:

- Identify the specific matter at issue for which EJR is requested;
- Demonstrate that there are no factual issues in dispute;
- Demonstrate that the PRRRB has jurisdiction;
- Identify the controlling law, regulation, Federal Register notice, or CMS Ruling that is being challenged; and
- Explain why the PRRB does not have authority to decide the legal question posed by the appeal.

31.    In addition, for a group appeal, the EJR Request must include the following, to the extent they have not been previously filed:

- Confirmation that the group is fully formed in accordance with PRRB Rule 19.
- If Rule 20.1.2 applies, both the hard copy filing and electronic submission of the final schedule of providers including the schedule of providers and supporting jurisdictional documents for each provider.

32.    Under CMS's regulation at 42 C.F.R. § 413.24(j)(1), a provider "must include an appropriate claim for the specific item" on its cost report for which it seeks "to receive or potentially qualify for reimbursement" by either:

i.      Claiming full reimbursement in the provider's cost report for the specific item in accordance with Medicare policy, if the provider seeks payment for the item that it believes comports with program policy; or

ii.     Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy (for example, if the provider believes the contractor lacks the authority or discretion to award the reimbursement the provider seeks for the item), by following the procedures (set forth in [42 C.F.R. § 413.24(j)(2)]) for properly self-disallowing the specific item in the provider's cost report as a protested amount.

**REGULATORY HISTORY OF THE APPROPRIATE COST REPORT CLAIM REQUIREMENT**

33.     The appropriate claims requirements in the current version of 42 C.F.R. § 413.24(j) were initially published in CMS's FY 2015 IPPS proposed rule in the Federal Register on May 15, 2014. See 79 Fed. Reg. 28206 (May 15, 2014). This proposed rule was subject to the statutorily required public notice-and-comment period and received many comments opposed to the finalization of problematic aspects of the rule.

34.     Among many criticisms of the FY 2015 proposed rule submitted by the public, the American Hospital Association ("AHA") submitted a comment (attached hereto as **Exhibit H**) vehemently opposing CMS's appropriate cost report claim policy stating:

> CMS's proposed change would inappropriately limit hospitals' ability to exercise their appeal rights based solely on the discretion of MACs. Specifically, under the proposed change, while a provider that fails to include an item on its cost report could file an amended cost report or request a reopening by its MAC to add the excluded item, whether to accept an amended cost report or issue a reopening is entirely at the MAC's discretion under current Medicare regulations.

***

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

> The proposal unduly vests the MACs with overly broad authority over hospitals' right to appeal items on the cost report. In the preamble to the proposed rule, CMS states that it anticipates that providers and MACs will engage in a back-and-forth process to resolve issues that might currently end in appeal, and that this would help alleviate the workload of the PRRB. However, even assuming that reducing the PRRB's workload is an appropriate goal, it is wholly inappropriate to do so by limiting providers' appeals rights in such a manner. CMS presents no evidence that the MACs are equipped and prepared to engage in this type of back-and-forth process. Moreover, hospitals report that MACs routinely decline to accept an amended or reopen a cost report rather than making a considered decision after a thorough assessment of the facts.

(Ex. H at 58).

35.    The Federation of American Hospitals ("FAH") noted similar concerns (comments attached as **Exhibit I**), urging CMS to withdraw its "proposal altogether" pointing out that the statutory authority under which CMS proposed its FY 2015 final rule, namely "sections 1815(a), 1833(e), and 1886(f)(1) of the Act," (*i.e.*, the Social Security Act, hereinafter, the "Act") is "misplaced." The FAH specified that:

> …section 1815(a) of the Act does not require any level of detail to be provided in a cost report in order to claim reimbursement on appeal. Section 1815(a) pertains only to the requirements for making interim payments to providers. Section 1833(e) of the Act does require that the Secretary not make payments without there being sufficient documentation, but this provision by its terms applies to payment under Part B, not to hospitals when seeking Part A payment, such as DSH payment. Section 1886(f)(1) of the Act merely requires the Secretary to have a cost reporting system. It says nothing about requiring providers to claim the precise amount of reimbursement due on their cost reports or be foreclosed from pursuing additional reimbursement on appeal. More importantly, hospitals do not disagree that they need to furnish appropriate information in order to receive Medicare payment. Yet, hospitals should not be prohibited from claiming payment based on information acquired after they file their cost reports. If the later-acquired information supports a hospital's claim for additional payment, the MAC will not make payment unless and until it has evaluated the information and determined that payment is appropriate.

(Ex. I at 44, 48).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**SPECIFIC FACTS PERTAINING TO THIS CASE**

36.    On January 26, 2022, February 27, 2023 and March 13, 2023, the PRRB received Plaintiffs' group appeal request (attached with issue statement as **Exhibit E, Exhibit E-1 and Exhibit E-2,** respectively), appealing their respective DSH adjustments. Plaintiffs timely appealed the MAC's non-inclusion of section 1115 waiver days, stating that they were appealing the MAC's "…exclusion from the Medicaid Fraction numerator (of the [DSH] adjustment calculation) days reimbursed by the uncompensated care pool established under Texas's Healthcare Transformation and Quality Improvement Program, which is a CMS-approved section 1115 waiver program." (Ex. E at 6, Ex. E-1 at 5; Ex. E-2 at 5). Plaintiffs went on stating that "[t]he MAC … erred in excluding [section 1115 waiver] days from the Medicaid Fraction numerator of the DSH adjustment for the Providers, and an adjustment of these cost reports is required for compliance with law.." (Ex. E at 8; Ex. E-1 at 7; Ex. E-2 at 7).

37.    On May 18, 2023, July 25, 2024 and August 13, 2024, the MAC filed substantive claim challenges ("SCCs") contending that each Plaintiff did not include "an appropriate cost report claim for the disputed issue" in accordance with 42 C.F.R. § 413.24(j) and requested that the PRRB declare, "…. that the item is <u>not</u> reimbursable [], regardless of whether the [PRRB] further determines in a final hearing decision that the other substantive reimbursement requirements for the specific item are or are not satisfied." (Ex. C at 6, 11; Ex. C-1 at 3, 9; Ex. C-2 at 4, 11) (emphasis in original). That is, the MAC contends that Plaintiffs did not properly self-disallow or claim reimbursement for the section 1115 waiver days at issue in the subject CIRP Group appeal, thus, even if Plaintiffs were to obtain favorable decision at their respective final administrative hearings before the PRRB, Plaintiffs would still not be entitled to payment for such days. (*See* Ex. C at 11; Ex. C-1 at 9; Ex. C-2 at 11).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

38.      Plaintiffs responded to the MAC's SCCs (responses for PRRB Case Nos. 22-0545GC; 23-1035GC and 23-1135GC attached hereto as **Exhibit F**, **Exhibit F-1 and Exhibit F-2**, respectively, stating that "[t]he term 'specific item'" in the context of 42 C.F.R. § 413.24(j) "refers to a specific cost report adjustment." Plaintiffs further stated that the MAC's substantive claim objection should be overruled because:

> [t]he very name "cost report claim" indicates that providers are not required to break down a claim into sub-issues. Moreover, in that rule CMS provided an exception, to the general requirement that providers must quantify the exact amount at issue for a specific item, in the case of Medicaid eligible days. [80 Fed. Reg.] at 70559. The rule did not require that, in order to avail themselves of this exception, providers must be any more granular than Medicaid eligible days. Whether the additional discovered Medicaid eligible days are due to previously unknown or unadjudicated Supplemental Security Income disability appeals, or babies born to mothers during the mothers' inpatient stays, or discovered participation in section 1115 waiver demonstrations, does not matter.

(Ex. F at 3; Ex. F-1 at 2-3; Ex. F-2 at 2-3).

39.      *Nearly **two years*** since the MAC submitted their most recent SCC, the PRRB has not issued a decision on any of the MAC's SCCs described *supra*. However, the PRRB has since explained its view on the MAC's contentions in its recent decision (PRRB SCC Determination for PRRB Case No. 21-0729 attached hereto as **Exhibit G**) on a similar SCC challenging a different provider's appeal of the inclusion of section 1115 waiver days in its Medicaid Fraction, finding that despite the provider in that case specifically appealing section 1115 waiver days, "[t]he Provider failed to make a claim for the 'specific item,' namely the DSH Medicaid fraction as it relates to Section 1115 Waiver Days" because "the Provider did not self-disallow the DSH – Section 1115 Waiver Days by following the procedures for properly self-disallowing the specific item in its cost report as a self-disallowed item." (Ex. G at 10). The PRRB continued, finding that "the Provider failed to specifically include a substantive claim for the DSH Section 1115 Waiver

Days issue, as required under 42 C.F.R. §413.24(j)(1). The item is not reimbursable regardless of whether the PRRB further determines in a final hearing decision that the other substantive reimbursement requirements for the specific item are or are not satisfied." (*Id.*)

40.      In its decision dated May 28, 2026 the PRRB, purportedly dismissed Plaintiffs' request for EJR, but effectively conceded that Plaintiffs met the requirements for EJR.  The statute provides that a provider or group of providers are entitled to EJR if the PRRB has jurisdiction and has determined that it does not have authority to  decide a question involving law or regulations. 42 U.S.C. § 1395oo(f)(1).  It is undisputed that the PRRB has jurisdiction over the Providers' appeals. (*See* Ex. B at 11). The Providers have challenged the validity of the substantive cost reporting requirements regulation [2] and the PRRB has admitted, as it must, that it has no authority to overrule the substantive e cost reporting requirements regulations stating that it, "…. does not have the authority to rule the regulation at 42 C.F.R. § 413.24(j) is invalid (Ex. B at 11); *see also* 42 C.F.R. § 405.1867.

41.      The PRRB's conclusion that the Providers' challenges to the substantive cost reporting requirements regulation are premature because it has not determined whether the Providers are entitled to reimbursement for the claimed section 1115 waiver days, (*see* Ex. B at 11) is nonsensical as it puts the cart (the substantive issue) before the horse (the procedural issue). Moreover, it is not within the PRRB's authority to determine whether a challenge to a regulation is "premature," or would be successful.  The statute is clear.  If the PRRB has jurisdiction over the appeal and does not have the authority to declare a challenged authority invalid, the provider or providers are entitled to EJR.  *See also* 42 C.F.R. § 405.1842(a), (b).  Nowhere does the statute or

---

[2]  The Providers contend that [sic] CMS's regulation at 42 C.F.R. § 413.24(j) is procedurally and substantively invalid."  (Ex. J at 5; Ex. J-1 at 5; Ex. J-2 at 5).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

the regulations give the PRRB the authority to pick and choose which legal challenges it deems are ripe or premature.

42.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…[s]hall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall …. compel agency action …. unreasonably delayed; and … hold unlawful and set aside agency action, findings, and conclusions found to be …. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. §§ 706(1), (2)(A). Further, a "…. reviewing court shall …. hold unlawful and set aside agency action, findings, and conclusions found to be …. unsupported by substantial evidence in a case …. reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

43.    As mentioned *supra*, the PRRB has yet to issue a decision on the MAC's SCCs *nearly two years* after the most recent challenge was filed. (*See* Ex. B at 11; *see also* Ex. C-2 at 2). Given that the PRRB had ostensibly decided its stance on the substantive claim issue by at least December 18, 2025, (Ex. G at 10-11), the fact that such a decision had yet to be issued for the subject CIRP Group appeals *over five months* later demonstrates an unreasonable delay in agency action with respect to the MAC's SCC filed over the same issue *nearly two to over three* years prior to the PRRB's determination on Plaintiffs' requests for EJR.

44.    Furthermore, the "unreasonably delayed" "agency action" described *supra* was part of the basis of the PRRB's denial of Plaintiffs' EJR request, demonstrating the arbitrary and capricious nature of the EJR denial. Despite previously outlining its position, the PRRB states that "[i]f the PRRB were to rule in the Providers' favor on those challenges, there would be no basis to challenge the substantive claim regulations." (Ex. B at 11). This sentence implies an outcome as

possible despite the foregoing conclusion of an adverse decision against Plaintiffs based on the PRRB's prior decision. This was either an example of the PRRB giving Plaintiffs false hope as to their chances of receiving reimbursement for the section 1115 waiver days at issue, or the PRRB was genuinely claiming that it may arbitrarily reverse its position on an issue that it had already ruled upon in accordance with its statutory and regulatory obligations. In either scenario, the PRRB's decision was clearly arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence.

45.     Despite the comments and concerns expressed by the public, the Secretary finalized the FY 2015 final rule with minimal changes to the substantive claim requirements on November 13, 2015. See 79 Fed. Reg. 50199 (Aug. 22, 2014); 80 Fed. Reg. 70551 (Nov. 13, 2015).

46.     CMS misused its statutory authority granted by sections 1815(a), 1833(e), and 1886(f)(1) of the Act to propose and finalize a restrictive change to CMS's cost report appeals policy as an attempt "…to circumvent the PRRB statute and regulations upheld by the courts through a related proposal disguised as a change to the cost reporting regulations. And in doing so, it has the effect, potentially purposeful, of very significantly limiting otherwise allowable Medicare payment to providers based only on information available at an arbitrary point in time: in simple terms – another "unjustified payment cut to hospitals." (Ex. I at 44).

<u>**Count I**</u>

**Judicial Review Under the Medicare Act and the APA**

**(The Substantive Cost Reporting Claim Requirements Under 42 C.F.R. § 413.24(j) Are Invalid)**

47.     Plaintiffs incorporate paragraphs 1-46 of this Complaint by reference.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

48.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

49.     CMS abused its discretion and acted outside its authority granted by sections 1815(a), 1833(e), and 1886(f)(1) of the Act when promulgating the FY 2015 final rule including the substantive cost reporting claim requirements codified at 42 C.F.R. § 413.24(j). Such requirements are therefore invalid.

## Count II

### Judicial Review Under the Medicare Act and the APA

**(The PRRB's Denial of the EJR Request was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

50.     Plaintiffs incorporate paragraphs 1-49 of this Complaint by reference.

51.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

52.     The PRRB's denial of Plaintiffs' requests for EJR of the substantive claim requirement under 42 C.F.R. § 413.24(j) was arbitrary, capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count III

### Judicial Review Under the Medicare Act and the APA

**(The PRRB's Inaction with Respect to Ruling on the MAC's SCC was unreasonably delayed)**

53.     Plaintiffs incorporate paragraphs 1-52 of this Complaint by reference.

54.     Under the APA, a "… [r]eviewing court shall … compel agency action … unreasonably delayed." 5 U.S.C. § 706(1).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

55.    The PRRB's inaction for *nearly two years* after the submission of the MAC's most recent SCC and *over five months* after it issued a decision on the same issue constitutes an "unreasonably delayed" agency action.

**REQUEST FOR RELIEF**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

a.    Granting this Court jurisdiction over Plaintiffs' challenges to the substantive cost reporting claim requirements codified at 42 C.F.R. § 413.24(j), and to the extent the Court deems it necessary, reversing the PRRB's denial of Plaintiffs' requests for EJR;

b.    Declaring the substantive cost reporting claim requirements codified at 42 C.F.R. 413.24(j) invalid, or in the alternative, declaring that Plaintiffs have satisfied such requirements;

c.    Directing the Secretary to direct its MAC to audit Plaintiff Hospitals' listings of section 1115 waiver days, accept all verified days, and include them in the Medicaid Fractions of Plaintiff Hospitals' respective DPPs for purposes of their respective DSH Adjustments;

d.    Awarding Plaintiff Hospitals' costs and interest; and

e.    Granting such other and further relief the Court deems just and proper.

/ / / /

/ / / /

/ / / /

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Dated: July 29, 2026

Respectfully submitted,

ALAN SEDLEY LAW CORPORATION

By: */s/ Alan J. Sedley*
Alan J. Sedley, Esq. Bay # OH0017
18880 Douglas, Suite 417
Irvine, CA 92612
Phone: 818.601.0098
asedley@sedleyhealthlaw.com

*Attorney for Plaintiffs*

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT